## THOMAS D. McCUBBIN, JR., *vs.* MARY A. STAN-FORD.

*Tenancy by Entireties—Mortgage by Husband of His Interest—Purchaser at Foreclosure Sale Not Entitled to Possession of the Property as Against the Wife.*

Land which was owned by a husband and wife as tenants by entireties was mortgaged by the husband to secure his debt. Upon foreclosure the husband's interest was sold to the plaintiff. The wife was in possession of the property and refused to surrender the same. Plaintiff petitioned for a writ of possession against her. *Held,* that since one tenant by entireties cannot alien the property so as to infringe the rights of the other, the mortgage by the husband could not affect the rights of his wife, and under the Constitution, Art. 3, sec. 43, declaring that the property of the wife shall be protected from the debts of the husband, the purchaser of the husband's interest is not entitled to possession of the property as against the wife, because her undivided entirety of interest in it would thereby be destroyed, and she would be deprived of the protection given her by the Constitution.*

Appeal from a *pro forma* decree of the Circuit Court of Baltimore City dismissing appellant's petition for a writ of possession. Thomas H. Stanford, Jr., being indebted to the Baltimore and Ohio Railroad Company, and holding a farm in Howard County in his own name, and a house on Eutaw Place in the names of himself and wife as tenants by entireties, on June 11th and 12th, 1894, conveyed said farm and said house to The Real Estate and Improvement Company of Baltimore City by deeds absolute in form, but which were in fact mortgages or deeds of trust to secure the payment of the debt due to the Baltimore and Ohio Railroad Company. From the deeds it appears that Stanford and his wife held the house as tenants by entireties, the language

---

*Appended to the case of *Hiles* v. *Fisher*, 144, N. Y. 306, as reprinted in 30 L. R. A. 305, is a note on tenancy by entireties.

of the granting clause, and of the *habendum* in both deeds being the same, to them, " or to the survivor of them." On April 11, 1896, The Real Estate and Improvement Company and the Baltimore and Ohio Railroad Company filed a bill against Stanford, setting forth that said deeds were in fact intended as deeds of trust to secure the sum of $7,326.60 due the Baltimore and Ohio Railroad Company, and asking that the property be sold. On the 13th of April, 1896, a decree was entered for the sale of the farm and the house, and on July 20th, 1896, the trustees reported a sale of Stanford's interest as tenant by entireties in the house to Mr. McCubbin, for one thousand dollars. A deed was executed by the trustee to Mr. McCubbin. Mrs. Stanford, the appellee and wife of Thomas H. Stanford, Jr., having declined to give up possession of the house to Mr. McCubbin, the purchaser, on September 5th, 1896, he filed his petition for a writ in the nature of a *habere facias possessionem* against Mrs. Stanford. She answered, and on November 4th, 1896, a decree *pro forma*, dismissing the petition, was entered, and Mr. McCubbin took this appeal.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, BOYD and RUSSUM, JJ.

*H. R. Preston* and *Malcolm V. Tyson* (with whom was *H. L. Bond, Jr.*, on the brief), for the appellant.

The provision of Article 75, section 88, of the Code, is that the writ shall issue against the debtor named in an execution or decree, an insolvent grantor or mortgagor, or any person holding under said debtor, insolvent grantor or mortgagor, &c. The petitioner's claim is, that a husband is entitled to possession of the property during the joint lives of himself and wife, and that therefore the wife, during their joint lives, is occupying the property, not in her right as tenant by entireties, but as wife of the person entitled to possession, and hence under him. If the husband alone is entitled to possession during their joint lives, then the

wife's possession is merely a holding by consent of the husband, and hence under him. This raises the question whether in such cases the husband is entitled to possession. If it is true that the husband is entitled to possession during the joint lives, then the same question is raised by the application for the writ in this case, as would be raised by the application for it in an ordinary case of mortgage foreclosure, where husband and wife were occupying the mortgaged premises. And if the writ is denied in this case, granting the law as above stated, then the purchaser at a mortgage sale would be left to his action of ejectment in every case where the wife of the mortgagee was in possession. The Maryland cases on estates by entirety are *Craft* v. *Wilcox*, 4 Gill, 505 ; *Marburg* v. *Cole*, 49 Md. 402 ; *Flading* v. *Rose*, 58 Md. 13.

The appellant's contention is, that at common law the husband being tenant by entireties, was entitled to possession of the entire estate, during the joint lives of himself and wife, that he could alien this estate, and also his contingent right of survivorship, the only limitation being that he could not affect his wife's right of survivorship, and that these incidents of his estate are unaffected by our Married Woman's Act.

All authorities agree, that at common law, the husband was entitled to possession during the joint lives of himself and wife. *Ward* v. *Ward*, L. R., 14 Ch. Div. 506 ; *Prey* v. *Stebbins*, 141 Mass. 219 ; *Washbum* v. *Burns*, 34 N. J. T. 18 ; *Barber* v. *Harris*, 15 Wend. 616 ; *McCurdy* v. *Canning*, 64 Pa. St. 41 ; *Corinth* v. *Emory*, 63 Vt. 505 ; *Bennett* v. *Child*, 19 Wis. 364 ; *Hiles* v. *Fisher*, 144 N. Y. 306.

The husband, at common law, could mortgage and convey his interest, including his right of survivorship, and it was liable to be taken for his debts. The expression is frequently used, "neither could alien" and like expressions. The meaning of this expression is said by JUDGE COWEN, in *Jackson* v. *McConnell*, 19 Wend. 180, to be that neither could alien the whole estate, so as to defeat the right of

survivorship. In *Ward* v. *Ward*, L. R. 14 Ch. Div. 506, creditors of husband sought to subject to garnishment process, an annuity held by trustees for husband and wife, as tenants by entireties. Counsel for wife admitted that the husband was entitled to the whole during their joint lives, but asked that an equity of settlement be allowed his wife. JESSEL, M. R., held the husband's creditors were entitled to annuity during the joint lives, and that wife had no interest which would entitle her to a settlement. This before the English Married Woman's Act. In *Fleek* v. *Zillhaver*, 117 Pa. St. 213, a husband and wife held by entireties, a judgment was recovered against the husband, and afterwards husband and wife united in mortgage. Execution was had, the land sold and conveyed by the sheriff, the wife then died. It was held that the purchaser, at the execution sale, took the husband's interest as survivor, the judgment preceding the mortgage, and the execution sale divesting the husband's right of survivorship. In *Pray* v. *Stebbins*, 141 Mass. 219, the contest was between a tenant claiming under husband and one claiming under wife. It was held that the husband had the right to lease during the joint lives, the Court saying : " By the great weight of authority, he (the husband) has the right to make a lease of an estate conveyed in fee to him and his wife, which will be good against the wife during coverture, and will fail only in the event of his wife surviving him."

In *Den* v. *Gardner*, 20 N. J. L. 556, husband mortgaged estate ; held he could do so. The wife being then alive there was no decision as to whether this would pass his right of survivorship, but from the argument of the Court it is plain that it was of opinion that the husband could pass his whole estate. In *Hiles* v. *Fisher*, 74 N. Y. Sup. Ct. 229, it was held that the husband could convey an estate for the joint lives, and the fee, in case he survived. This was affirmed as to the common law doctrine on appeal in 144 N. Y. 306. In *Bennett* v. *Child*, 19 Wis. 363, execution was had upon husband's interest ; held that it was

subject to execution. The wife was alive, so the actual decision only extended to the life estate. In *Corinth* v. *Emory*, 63 Vt. 505, it was said that undoubtedly at common law the husband's life estate was liable to be taken for his debts, though under their peculiar Married Woman's Act, it was not. In *Ames* v. *Norman*, 4 Sneed (Tenn.), 683, it was held that husband's estate, including right of survivorship, could be levied upon. *Bank* v. *Corder*, 32 W. Va. 233, holds that the husband could convey his entire interest at common.

*Effect of Married Woman's Acts.* The decisions may be divided into four classes, which we will call the English rule, the Pennsylvania rule, the New Jersey rule and the Massachusetts rule.

*English Rule.* The Alabama Court holds that their Act destroys the estate, saying: " Both grantees being capable of taking separately, it is impossible that they should take by entireties, as if they constituted a single person ; of necessity they take by moieties." *Walthall* v. *Goree*, 36 Ala. 728. In Illinois, tenancy by entireties is held to be abolished by their Married Woman's Act, the estate depending upon the legal unity of husband and wife, and that as far as the acquisition and enjoyment of property is concerned under their act, they are now two persons. *Cooper* v. *Cooper*, 76 Ill. 57.

The English rule seems to be that their Married Woman's Act has destroyed tenancies by entireties. In *Mander* v. *Harris*, L. R. 27 Ch. Div. 166, a will was executed in 1880, the Married Woman's Act passed in 1882 and testatrix dies in 1883. She left personal estate to A and B, husband and wife, and to C. The Court held that looking to the intention of the testatrix, she must be held to have in mind the state of the law when the will was made, and hence, to have given one-half to A and B as one person, and one-half to C, and, therefore, they divided the property in moities between A, B and C. But that, as to the estate the husband and wife took, the Act applied, and they took

each one-quarter, the wife holding her share to her separate use.  In *Thornley* v. *Same*, L. R. 2 Ch. Div. (1893), 229, the Court holds distinctly, that under their Act, husband and wife take as joint tenants, and the tenancy is destroyed.

*Pennsylvania Rule.*  In *McCurdy* v. *Canning*, 64 Pa. St. 39, it is held that the estate exists, but that the Married Woman's Act protects the wife in the enjoyment of the estate with her husband, hence execution cannot be had upon the husband's interest, so as to give the purchaser right of possession *during the wife's life.*  We have seen in the case of *Flack* v. *Zillhaver*, 117 Pa. St. 213, above, that the husband's right of survivorship is subject to execution.  There was no contest as to possession during the joint lives, the purchaser at execution sale not having moved until the wife's death.  The decision is that the wife is entitled to possession jointly with her husband, and it is this joint possession which the Act secures to her.  The difficulty with this rule is, that while it can be applied to a dwelling-house, in which both live, it is impossible to apply it to property, from which they receive rents and profits ; under this rule, which is entitled to receive the rents ? While they are in accord no difficulty arises, but then the protection of the Act is not needed.  Manifestly the wife cannot be protected in the joint possession of money when her husband is living apart.  The only thing the Court can do is to give her a part of the money, and in doing this make her a tenant in common or joint tenant with her husband.  It is too plain for argument that a woman cannot hold property for her sole and separate use, protected from her husband and at the same time hold it in entireties with him.  This must be forced upon the Pennsylvania Court when they come to deal with a case involving property producing rents.  They must then hold that each takes half, which in effect would be to hold that tenancies by entireties are destroyed by their Married Woman's Act.  About the same rule is adopted in Vermont under the rather peculiar

wording of their Married Woman's Act. *Corinth* v. *Emory*, 63 Vt. 505.

*New Jersey Rule.* The third theory as to the effect of the Married Woman's Act on tenancies by entireties is the one held in New Jersey. *Butler* v. *Rosentbath*, 42 N. J. Eq. 651, decided in March, 1887.

In *Hiles* v. *Fisher*, 144 N. Y. 306, the husband mortgaged his interest, the wife refusing to join. Held that the mortgage passed an undivided one-half of the estate during their joint lives and the fee, in case he survived his wife. The Court says there can be but two alternatives, if the estate is held to exist, the Pennsylvania and New Jersey rules ; of the former it says : " The rule in Pennsylvania not only deprives the husband of his common law right to the enjoyment of the whole rents and profits, but the enjoyment of any share thereof, except with the concurrence and permission of his wife." It then adopts the New Jersey rule of giving each an undivided one-half. The New Jersey rule is also adopted in Arkansas in a very good case, citing New Jersey and New York cases above. *Branch* v. *Polk*, 33 So. W. Rep. 424.

*Massachusetts Rule.* In *Prey* v. *Stebbins*, 141 Mass. 219, before cited, the effect of the Married Woman's Act was passed upon. The Massachusetts Joint Tenancy Act expressly excepted from its operation conveyances to husband and wife. The Married Woman's Act was held not to apply to the estate which a married woman took by entireties, the Court holding that if it did, and she took her interest for her separate use, she would become a tenant in common with her husband, and the Joint Tenancy Act showed it was the purpose of the law that estates by entirety should be preserved. The Court then considered the estate at common law, and held the husband had a right to make a lease alone. The same rule is held in Mississippi, *McDuff* v. *Beauchamp*, 50 Miss. 531, and in Tennessee, *Ames* v. *Norman*, 4 Sneed, 683.

In *Newlove* v. *Callaghan*, 86 Mich. 297, an instructive

case arose. A husband, being in debt, and owning $20,000 worth of property, in name of himself and wife, purchased additional property, and took title in same way. The creditors sought to subject this last property to the payment of the husband's debt; although the Court had held, after twice overruling itself, that the estate existed, and had said, though not decided, that neither could convey, this scheme of the husband to protect himself from his creditors was too much for the Court, and it held the husband's undivided half interest was subject to his debts. The Court says, estates by entirety cannot be created for the purpose of defeating creditors, any more than title can be taken in the name of the wife for that purpose. They, therefore, divided an estate by entirety, allowing the wife to keep her undivided half, it appearing she had paid for half, but wisely refrain from saying what sort of an estate was created. They do what the *dicta* in the earlier cases say cannot be done, namely, destroy the wife's interest in the whole for the sake of her husband's creditors.

From these cases it will be seen that the Courts have held that the Married Woman's Act have: (1). Entirely destroyed estates by entireties. This is held in England, Alabama and Illinois. (2). The estate is preserved, wife is held to have her sole and separate estate in the whole. This is the Pennsylvania and Vermont rule. (3). The estate still exists in some of its incidents, as survivorship, but the wife holds her one-half to her separate use, and the husband the other half, which he can convey, and which can be taken by his creditors, subject to the contingent right of survivorship in his wife. This is the New Jersey, New York and Arkansas rule. (4). The estate is unaffected by the Act, the reason given being that to give effect to the Act would destroy the estate. This is the Massachusetts, Mississippi and Tennessee rule.

At common law, the difficulties, which are sought to be met by the cases cited, did not arise, since the husband was entitled to possession of the estate during the joint lives;

but the "Married Woman's Act," by taking away the husband's marital rights over his wife's property, have made it necessary that some rule be established with reference to this estate.   The difficulty lies in the attempt to preserve the peculiar nature of the holding of the husband and wife, as it existed at common law, and at the same time give effect to the " Married Woman's Acts." The four rules above given, illustrate the methods of doing this.   The most direct and logical way out of the difficulty is that taken by the English rule, which holds that the legal unity between the husband and wife is so affected by the Acts, that the estate no longer exists.   From this rule we are cut off in this State by the decision in *Marburg* v. *Cole*.   The fourth rule, held in Massachusetts, Mississippi and Tennessee, is equally simple and logical, and presents the other extreme. It makes the " Married Woman's Acts " yield to the common law.   These two rules avoid any practical difficulties, offer easy solutions of any questions arising out of the conflict between the " Married Woman's Acts " and the peculiar nature of this estate.   The reason in the Massachusetts case is, that since tenancies by entireties are specially excepted from the operation of the Act abolishing joint tenancies, it must be presumed that it is the policy of the law to preserve this estate, and hence, the Legislature will not be presumed to have intended to abolish indirectly, by the " Married Woman's Act," an estate, which it expressly provided should not be abolished by the " Joint Tenancy Act," which was dealing directly with the question of joint tenancies, of which this estate is a species.   The same reasoning applies in this State, since our Act, with reference to joint tenancy, is held in *Craft* v. *Wilcox,* not to have affected this estate.   The Pennsylvania rule is the most illogical of all, and besides being illogical, presents practical difficulties, which are very great.   The Pennsylvania cases are cited with approval in *Marburg* v. *Cole,* but it is evident that the approval of the Court extends only to the decision that the estate has not been abolished.   This appears very

clearly, from the fact that the case of *The Bank* v. *Gregory*, 49 Barb. 155, is also cited with approval. That case holds that execution can be had upon the husband's estate, saying, if they hold otherwise, "a new and convenient mode would be discovered of keeping and enjoying any amount of property, in defiance of any and all creditors." It is also apparent, that the Court did not intend to adopt the Pennsylvania rule, from the fact that in *Fladung* v. *Rose*, the Court declines to pass on the question of the liability of the husband's estate for his debts. The main objection to the Pennsylvania rule is, that it creates an estate with which it is impossible either for the owners or the Courts to deal. Probably, the Court in 64 Pa., was dealing with a dwelling-house. When applied to property of that sort, the impossibility of the rule is not apparent, but when applied to other property producing rents, it is evident that no Court could deal with the estate. The question, as to who would be entitled to the rents, and whose receipt for rents would be good, under the decision in that case, would be one that it would tax the ingenuity of any Court to determine. The reason given in the case why execution cannot be had upon the husband's estate is, that not only is the wife entitled to her interest in a part of the property, but she is entitled to her interest in the whole. This certainly does not mean that she is entitled to all the rents, since then the rule would be that the wife was entitled to the enjoyment of the entire estate during their joint lives, to the exclusion of the husband. How then is it possible for a Court to protect a wife in the enjoyment of a sum of money held upon a tenure such as that described in this case? The Court cannot give her all the rents, and thus deprive her husband of all his interest; and if it gives her a portion of the rents, then it does precisely what it is held in this case cannot be done. It would seem very clear that the Court must modify its rule, when such a case is presented to it. In the meantime a tenant occupying property held in this way would be entirely at a loss to know to whom he could pay his rent. If

the husband and wife were not in accord, neither could give him a good receipt.

There is a further objection to this rule, which is pointed out very clearly in the New York case, and in several other cases. By taking title in the name of his wife, a husband is enabled to enjoy property and be absolutely protected from his creditors. This is perhaps the most serious objection to this rule. The husband would derive all the benefit from the property which he could derive, if he held it in his own name, and no matter what the amount of his property was, no creditor could subject it to the payment of his debts in any way during his wife's life. We should then have a curious rule that if the husband, being indebted, took title in the name of his wife, that property would be liable for his debts, but if he took it in the name of himself and wife, it would not be liable for his debts. The Michigan Court had this very case presented to it in the case above cited, and held that the husband could not create such an estate to the prejudice of his creditors, making the nature of the estate which the husband and wife took dependent upon whether the husband was or was not indebted at the time of making the conveyance.

The New Jersey rule offers no practical difficulty. It is strongly upheld in the New York case, where the Pennsylvania rule is disposed of in a very clear way. This rule gives to each a separate right in the estate during their joint lives, and makes the husband's estate liable for his debts. At the same time, it preserves the right of survivorship. Looking at the history of the estate, this rule cannot be called logical, since the estate arose from the common law doctrine of the unity of husband and wife. Whether this unity is or is not entirely destroyed by the "Married Woman's Acts," certainly, as far as their holding of their real estate, under this rule there is no longer any unity. They certainly hold as two persons, and the only distinction between this estate and other joint tenancies under this rule, is that other joint tenancies may be destroyed by the

conveyance of either tenant; whereas, this estate cannot be destroyed except by the act of both.

The Massachusetts rule is perfectly logical and a good practical rule. If the estate exists at all, it is difficult to give effect to the "Married Woman's Act," and preserve the estate. To give effect to the Acts must destroy the holding *per tout*, and this is the one distinguishing feature of the tenure. If the husband's right of possession arose from the nature of the tenure, and not from his marital rights over all his wife's property, then it would seem that this estate was one which was not within the protection of the "Married Woman's Act," since that Act merely protects property which a married woman acquires, and does not change the mode of acquiring property, and by this estate at common law the married woman acquired no estate during their joint lives. It is not clear, however, whether the husband's right of possession arose from the nature of the tenure or from his marital rights over his wife's property. Being cut off as we are in this State from the English rule, the only consistent rule left is the Massachusetts rule. The New Jersey rule is certainly a good practical rule, but it is not a logical one; it creates an estate, which may be a useful method of holding property, but it is not the common law estate by entireties.

*Joseph B. Seth* (with whom was *Harry E. Mann* on the brief), for the appellee.

BRYAN, J., delivered the opinion of the Court.

McCubbin having purchased certain real estate in the city of Baltimore at a sale under a decree in equity, filed a petition for a writ of *habere facias possessionem* against Mrs. Stanford, who was in possession of the property. Her husband was the defendant in equity, but she was not a party to the proceeding. The suit was for the purpose of subjecting the property to the payment of a mortgage executed by the husband. She answered the petition, and the Court *pro forma* dismissed it. Appeal by McCubbin.

It was stated in the petition and admitted in the answer that the real estate was conveyed to Stanford and his wife to hold by entireties. By the common law, husband and wife were considered one person. When, therefore, land was conveyed to them and their heirs, each was in contemplation of law seized and possessed of the entire estate in fee-simple, and neither could dispose of any part of it without the assent of the other. Each was entitled to the whole by reason of the legal unity of their existence ; and consequently an alienation of any part by either one of them would infringe the vested right of the other. The common law on this point has never been changed in this State. *Marburg* v. *Cole*, 49 Md. 411. The forty-third section of the third Article of the Constitution declares that "the property of the wife shall be protected from the debts of the husband." We decided in *Clark* v. *Wooton*, 63 Md. 113, that this provision of the Constitution conferred the protection upon the wife's property without the necessity of an Act of an Assembly, and that it embraced every portion of the property. The matter which was the subject of consideration in that case was a judgment in favor of husband and wife, which they held by the unity of interest, which is a consequence of the matrimonial relation. By the law, the husband had the right to alien it, but nevertheless, unless he saw fit to do so, the wife's interest existed, and it would have survived to her in case of his death in her lifetime. The constitutional protection is in the words of the Act of 1853, chapter 245. This Act did not impair or alter the marital rights of the husband in his wife's property, but it placed it beyond the reach of his creditors. *Schindel* v. *Schindel*, 12 Md. 313 ; *Plummer* v. *Jarman*, 44 Md. 637 ; *Keller* v. *Keller*, 45 Md. 276. By the construction given to it the husband might have an interest in his wife's property, but it was not subject to his liabilities. In *Clark* v. *Wooten* we decided that the judgment could not be subjected to the husband's debts, because thereby the wife's undivided entirety of interest in it would be destroyed, and

she would be deprived of the protection which the Consti-
tution intended to give her.    The reasons for the conclusion
to which the Court came will be found stated in the report
of the case ; and they need not to be repeated now.    It
appears to us that the present case ought to be decided in
the same way.    Mrs. Stanford's rights are indefeasible by
any deed of her husband, and cannot be subjected to any of
his debts.

*Order affirmed with costs.*

(Decided March 31st, 1897.)